CLARA WACHTEL, Appellant, v. NATIONAL ALFALFA JOURNAL COMPANY, Appellee.

**DAMAGES: Remote and Speculative—Newspaper Subscription Contest.**
1   A publisher who promises a series of valuable prizes in a newspaper subscription contest, and wrongfully withdraws the contest at a time when a good-faith contestant is *practically certain* to win one of such prizes, is liable to the contestant for the value of what he has lost, viz.: the value of the contract to him—the value of the right to compete for the prizes.   Under such circumstances, the damages are not too remote and speculative for allowance, even though they are incapable of exact determination.

**EVIDENCE: Relevancy—Newspaper Subscription Contest.**   In an ac-
2   tion for damages for the wrongful withdrawal by the publisher of a newspaper subscription contest, by which contestant was deprived of a practically certain opportunity to win a prize, evidence is admissible to show (1) the number, character, and value of the prizes offered, (2) the number of contestants, (3) the extent of the territory covered by the contract, (4) the standing of the plaintiff at the termination of the contract, and (5) other facts bearing on the probability that contestant would have won a prize.

**APPEAL AND ERROR:  Failure to Introduce Evidence of Substantial**
3   **Damages.**   Appellee may not contend, on appeal, that no evidence

of substantial damages was introduced, and that, therefore, appellant should go hence with nominal damages only, when the record reveals the fact that the entire trial proceeded on the ruling of the court that nominal damages only were recoverable.

**DAMAGES: Remote and Speculative.** Mental pain suffered by a contestant in a newspaper subscription contest wrongfully terminated by the publisher, flowing from complaints by subscribers that they did not secure their premiums, is pure speculation.

*Appeal from Chickasaw District Court.*—H. E. TAYLOR, Judge.

MARCH 16, 1920.

REHEARING DENIED FEBRUARY 17, 1921.

ACTION for damages, resulting in a judgment in favor of plaintiff for nominal damages. She appeals.—*Reversed.*

*R. Feyerbend* and *M. F. Condon,* for appellant.

*Hurd, Lenehan, Smith & O'Connor,* for appellee.

STEVENS, J.—The defendant, The National Alfalfa Journal Company, is a corporation, having a place of business at Sioux Falls, South Dakota. Some time prior to April 2, 1917, defendant offered prizes to persons residing in 42 counties of this state who would engage in a contest for subscriptions to the Alfalfa Journal. The territory was divided into 4 districts, and 49 prizes were to be awarded to contestants receiving the largest number of votes in each district, based upon the number of subscriptions obtained, and also a Hudson Super-Six seven-passenger touring car, valued at $1,650, a grand prize to the contestant receiving the largest number of votes in the 42 counties, making 50 prizes in all. A capital prize, together with a large number of minor prizes, was offered to each of the 49 successful contestants in each district, as follows:

To the one securing the largest number, an Allen automobile, valued at $850; to the one securing the next largest number, an upright piano; "likewise, in each district a $150 phono-

*1. DAMAGES: remote and speculative: newspaper subscription contest.*

graph will be awarded to the candidate who secures the third largest number of votes; a $100 diamond ring to the candidate who secures the fourth largest number of votes; a $75 diamond ring to the fifth; a $25 jewelry set to the sixth, seventh, eighth, ninth, tenth, and eleventh; a $20.00 gold watch to the twelfth, thirteenth, fourteenth, fifteenth, and sixteenth; Carola phonograph to the seventeenth, eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, and twenty-sixth; a 'Paragon' 34-piece silver set to the twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, and thirty-first.   An Eastman kodak to the thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, fortieth, and forty-first; and a 26-piece set of Roger's silverware to the forty-second, forty-third, forty-fourth, forty-fifth, forty-sixth, forty-seventh, forty-eighth, forty-ninth, and fiftieth.''

.   The voting power of each subscription decreased as the end of the contest, which was to open April 2d and close June 16th, approached.   From April 2d to May 12th, each subscription obtained for one year entitled the contestant to 3,000 votes, for three years, 6,000, and for five years, 15,000; from May 14th to June 2d, for one year, 2,000 votes, three years, 4,000, five years, 10,000; and from June 2d to June 16th, for one year, 1,000, three years, 2,000, and five years, 5,000.

Plaintiff accepted defendant's offer, entered the contest, and continued to work for subscriptions until April 28th, when defendant advised her by letter that the management had decided to abandon the contest in Districts 3 and 4.   Plaintiff resided in the latter district, but each contestant had the right to secure subscriptions anywhere without, as well as within, the district.   At the time the contest was closed in District No. 4, on April 28th, plaintiff stood first in the number of subscriptions obtained, and was entitled to more votes than any of her competitors.   Each contestant failing to obtain one of the prizes was to secure a commission of 10 per cent upon the amount turned in on subscriptions.   Plaintiff alleged in her petition that, on account of the termination and abandonment of the contest in District No. 4, she was deprived of a right to participate

therein, and win one of the prizes offered, and asks damages in the sum of $850.

Defendant in its answer admitted that a contest was begun, as alleged, that plaintiff obtained subscriptions and forwarded $17 in cash to defendant, and that she was prevented by the discontinuance of the contest from further participation therein; but denied that she is entitled, in any event, to recover more than nominal damages. The court awarded her nominal damages, together with 10 per cent of the amount received on subscriptions procured by her. Count 2 of plaintiff's petition will be referred to later.

I.   While the facts involved in this case, together with the demand for damages for the breach of the contract alleged, are somewhat unusual, its decision is controlled by familiar elementary principles. Two reasons are urged by appellee why plaintiff can recover only nominal damages:   (a) That the damages sought are too remote and speculative, and could not have been within the contemplation of the parties to the contract; and (b) that they are contingent, speculative, uncertain, and incapable of being measured by a jury.

The manifest purpose of the contest on the part of the defendant was to increase the circulation and earning power of its paper. Similar contests are frequent, and, no doubt, often, if not usually, result in substantial profit, directly or indirectly, to the promoter. The plan contemplates that the friends of each contestant will be generous in subscribing for the paper, and more or less active in procuring others to subscribe therefor, in the interest of local contestants. The purpose for which plaintiff engaged in the contest was doubtless to win one of the valuable prizes offered. As, therefore, the purpose of the contest upon the part of defendant was pecuniary profit, and of plaintiff to win a prize, both must have known and contemplated that a breach of the contract which would deprive her of the right to do so might result in substantial damages, depending largely upon the situation at the time of the breach. If only nominal damages are recoverable because of remoteness, it would make no difference whether the breach occurred in the middle of the contest or the day before it was to close. The result would be the same. The engagement of plaintiff, although it might re-

sult in disappointment, was not an idle one. It was evidently in good faith, for the purpose of aiding defendant to extend its subscription list, with whatever benefits might accrue therefrom, and to obtain, if possible, as compensation, a valuable prize. While no case exactly like the one at bar has been called to our attention, we are not entirely without precedent to sustain our conclusion that the damages are not too remote to permit recovery for the breach of the contract.

The defendant in *Chaplin v. Hicks*, 2 King's Bench (1911) 786, a celebrated theatrical manager, was continuously beset with numerous applications of actresses for employment. He conceived a plan by which he was to select 24 photographs from the number offered, have them published in a newspaper, and the readers thereof were to select 12 therefrom as winners, to the first 4 of whom an engagement would be given for 3 years at 5 pounds per week; to the second 4 for 3 years, at 4 pounds per week; and to the third 4 for 3 years at 3 pounds per week. The response to the announcement in the newspaper was prompt, and about 6,000 photographs were sent in. The plan as outlined was modified, so that the defendant, with the assistance of a committee, selected about 300 photographs to be published in the paper. The United Kingdom was divided into 10 districts, and the photographs of the selected candidates in each district were submitted to the readers of the newspaper therein, who were given the privilege of choosing by their votes whom they considered the most beautiful. The 50 photographs were then published in the newspaper, together with a ballot paper, on which the reader registered his vote for the particular one he preferred, adding signature and address. Plaintiff appeared first in her particular section, as one of the 50 eligible contestants. The defendant caused a letter to be written to plaintiff, asking her to call at a place named, on the afternoon of January 6th, to see him. The letter was sent to the address given by plaintiff in her application, and delivery thereof sought on January 5th. Plaintiff was, however, at the time filling an engagement at another place, to which the letter was forwarded; but it failed to reach her in time to enable her to keep the appointment, thereby preventing her from competing as one of the 12 for the employ-

ment. Failing to procure another appointment with the defendant, she brought suit for damages, alleging that defendant breached the contract by failing to take reasonable means to give her an opportunity to present herself for selection. The jury awarded damages to the amount of 100 pounds. Counsel for defendant contended that the damages sought by plaintiff could not be recovered, for the reason that same were too remote, and impossible of admeasurement. The court said:

"As regards remoteness, the test that is generally applied is to see whether the damages sought to be recovered follow so naturally or by express declaration from the terms of the contract that they can be said to be the result of the breach. This generally resolves itself into the question whether the damages flowing from a breach of contract were such as must have been contemplated by the parties as a possible result of the breach. Now, the moment it is admitted that the contract was, in effect, one which gave the plaintiff a right to present herself, and to take her chance of getting a prize, and the moment the jury find that she did not have a reasonable opportunity of presenting herself on the particular day, we have a breach, attended by neglect of the defendant to give her a later opportunity; and when we get a breach of that sort, and a claim for loss sustained in consequence of the failure to give the plaintiff an opportunity of taking part in the competition, it is impossible to say that such a result and such damages were not within the contemplation of the parties as the possible direct outcome of the breach of contract. I cannot think these damages are too remote, and I need say no more on the question of remoteness."

*Adams Exp. Co. v. Egbert*, 36 Pa. St. 360, cited by counsel, is not so closely in point. The plaintiff in that case brought suit against the Adams Express Company for damages on account of its failure to transport and deliver a box of architectural designs, sent by him to the building committee of an almshouse in New Orleans, who had advertised for plans and specifications therefor, and offered a premium of $500 to the successful competitor. The court held that, under the proof offered, plaintiff was entitled to nominal damages only, and did not pass directly upon the question we are now discussing, but said:

"The fact appears to be that the *opportunity to compete* is

what gives the time and labor expended any value, and if there can be any recovery at all, beyond nominal damages, as was held by the Queen's Bench [*Watson v. Ambergate, N., & B. R. Co.*, 15 Jurist 448], it must be because the loss of the chance for the prize, as it was then called, or, as I would term it, the loss of the opportunity to compete for the prize, is not too remote to be considered, and because its worth is capable of being measured. * * * Whether, in the present case, this plaintiff sustained any actual injury, depended upon the degree of probability there was, that he would have been a successful competitor if the contract had not been broken. If his plans were entirely defective, if they were suited better for a bridge than for an almshouse, it cannot be claimed that he was damaged. He introduced, however, no evidence to show that there. was the least probability that the premium would have been awarded to him, had his plans been submitted to the committee in time. On the contrary, the defendants proved that doubtless he must have failed. So far, then, from there being proof of actual damage, it was disproved.''

It seems to us that the damages claimed are the reasonable, natural, and probable consequence of the admitted breach of the contract. The right of plaintiff to obtain a valuable prize was of some value, although the damages resulting from the loss thereof may be incapable of precise or exact specification.

As stated, the court allowed a sum as nominal damages, for which defendant admitted liability; hence we take it that appellee relies principally upon its claim that the damages are too uncertain and speculative to be ascertained by the jury, and that only nominal damages are allowable. The case was submitted upon the pleadings and stipulations as to certain facts, from which it appears that plaintiff, up to April 28th, when she received the letter from defendant, advising her that the contest had been dropped in the third and fourth districts, had, during her spare time, solicited and obtained a small number of subscriptions for the Journal. Defendant, in the letter referred to, as the reason for closing the contest, stated that, out of 250 nominations in Districts 3 and 4, but 4 or 5 contestants had shown an interest, or gone to work. The record does not disclose how many of the 4 or 5 contestants were working in the

fourth district, but it appears without conflict that plaintiff was, on April 28th, entitled to the highest number of votes in that district. It may be conceded that no one, at the time the contest was closed, could determine what plaintiff's standing would have been on June 16th, the time originally fixed for terminating the·contest, nor was she absolutely sure to win the capital district prize. Other contestants, up to that time inactive, might have entered the field, and won all of the premiums offered.

Numerous letters written by defendant's manager to plaintiff, encouraging her to go after subscriptions, appear in the record. We may assume, in view of the large number of valuable prizes offered, that defendant terminated the contest only after it had failed by the same methods, and perhaps others, to induce enough contestants to join in the campaign to make it profitable to continue the contest in the districts in question. We may also assume that the letter correctly states the number of contestants at that time engaged. If the situation thus shown continued to the end of the campaign, plaintiff was absolutely sure to win a prize, and, if she finished fifth, it would have been a $75 diamond ring. She had a chance, however, to win either the seven-passenger or the $850 automobile. Was there, therefore, such uncertainty in the probabilities of plaintiff's winning a valuable prize as to limit her recovery, as a matter of law, to nominal damages?

As already indicated, the defendant ostensibly terminated the contract because the participants in the contest showed a lack of interest, but doubtless primarily because it had become apparent that a continuance thereof was sure to result in financial loss. Had plaintiff finished first in the district contest, she would have earned an automobile worth $850. The right under the contract to do this was of some value, and, under the facts disclosed, she was practically certain to win one of the 5 best minor prizes. It should be further remembered that 50 valuable prizes in all were offered to the successful contestants.

The facts in *McPeek v. Western Union Tel. Co.*, 107 Iowa 356, 358, were substantially as follows: The governor had offered a reward for the arrest of one McPherson, who had fled, after mortally wounding the marshal of Morning Sun. Mrs. McPherson had agreed to aid plaintiff to procure the arrest of

her husband, and to wire him, if he came unexpectedly. About 7 P. M. of the 22d, she delivered the following message to defendant's agent at Morning Sun, telling him she wanted it sent and delivered at once: "E. E. McPeek, Winfield. Come on first train. Answer. M. E. M." The agent at Winfield took it to plaintiff's residence at 9:15 P. M., but, failing to get a response when he knocked on the door, fastened the telegram, which was inclosed in an envelope, in the door, and went away. It was found the next morning, between 9 and 10 o'clock. The agent supposed that the family was away, but the members had retired, only. McPherson, by reason of the delay, escaped, and plaintiff lost the reward. He charged in his petition that the loss was due to the negligent failure of defendant to deliver the message. The judgment was sustained, the court holding that the damages were not too remote, and were such as either party might have contemplated from the wording of the message.

Barker v. Western Union Tel. Co., 134 Wis. 147 (114 N. W. 439), involved claim for damages, based upon the failure of defendant to make delivery to plaintiff of the following telegram, dated April 22, 1905, at Englewood, Illinois, for immediate transmission and delivery to plaintiff at Madison, Wisconsin.

"To Mr. Chas. E. Barker, care of Harnan House, Madison, Wis. Will you be in Madison Sunday or will you come to Chicago. Have a man that wants to see you at once. Wire me care Goes Litho. Co. 158 Adams Street. J. J. Hansberry."

A party in Chicago desired to take a course of treatment of plaintiff, either at Chicago or Madison, but, failing to receive a reply to the above message, went to Arizona; and plaintiff, as he alleged in his petition, was, by reason thereof, deprived of probable employment, resulting in a pecuniary loss. The court held that he was entitled to recover, although, as appears from the above statement, there was no contract actually entered into with the patient.

Without reviewing them in detail, the following, among many other available cases, may be cited: Rule v. McGregor, 117 Iowa 419; Hichhorn, Mack & Co. v. Bradley, 117 Iowa 130; Stumm v. Western Union Tel. Co., 140 Wis. 528 (122 N. W.

1032); *Williams v. Spokane Falls & N. R. Co.*, 42 Wash. 597 (84 Pac. 1129); *Bredemeier v. Pacific Supply Co.*, 64 Ore. 576 (131 Pac. 312).

Recoverable damages are often incapable of exact determination: i. e., damages for pain and suffering; permanent injuries; loss of profits. The measure of plaintiff's damages was

2. EVIDENCE: relevancy: newspaper subscription contest.

the value of the contract; the value of the right to compete for one of the prizes offered. In estimating damages to be allowed, the jury would have a right to take into consideration the number, character, and value of the prizes offered, the number of contestants, the extent of territory covered by the contract, the standing of plaintiff at its termination, her reasonable probability, if shown, of winning some one of the prizes, and such other facts and circumstances as might reasonably bear thereon. There is, of necessity, much uncertainty as to what might have been the outcome of the contest; but the probabilities of plaintiff's winning a prize, under the facts disclosed, were not so uncertain, indefinite, and contingent as to limit her right of recovery, as a matter of law, to nominal damages only. The measure of her damages, as already indicated, was not the value of any one, of the 50 prizes offered, because the jury would have no means of ascertaining which prize she would have won, if any. Apparently, there was little probability, however, that she would have failed to win something. The contest was well along toward its close, at the time it was terminated, and the voting power of subscriptions decreased as it progressed. There were not to exceed five working contestants, and plaintiff stood first in the number of votes.

We reach the conclusion that the question of damages was for the jury, and that the court erred in awarding nominal damages only. Many authorities, announcing familiar rules, and bearing upon the questions before us, are cited by counsel for appellant, but none of them is decisive, and it will serve no good purpose to review them at length. We, however, call attention to the following: *Fell v. Newberry*, 106 Mich. 542 (64 N. W. 474); *Morgan v. Sutlive*, 148 Iowa 318; *United States v. Behan*, 110 U. S. 338; *Wolcott v. Mount*, 36 N. J. L. 262 (13 Am. Rep. 438); *Hichhorn, Mack & Co. v. Bradley*, supra; *First Nat.*

*Bank v. Thurman,* 69 Iowa 693; *Bernstein v. Meech,* 130 N. Y. 354 (29 N. E. 255).

II.   But one other question bearing upon this phase of plaintiff's case requires attention.   It is contended by counsel

3. APPEAL AND ERROR: failure to introduce evidence of substantial damages.

for appellee that, even if it were conceded that plaintiff were entitled to recover more than nominal damages, she failed to introduce evidence to show the expense already incurred and to be incurred in carrying on the contest.

The rule for which counsel contends, in cases where damages are sought for the loss of profits, is familiar, but we think it should not be applied to the facts before us.   It is apparent from the record, which, as stated, consists of the pleadings, stipulations, and remarks of court and counsel, that a jury was dispensed with, and the cause submitted to the court, for the reason that only nominal damages were involved.   No evidence whatever was offered; and, as we understand the record, this was due to the view of the trial court that nominal damages only could be recovered.

III.   We come now to Count 2 of plaintiff's petition, in which she seeks to recover damages for pain and suffering caused by the complaints of subscribers obtained by her, to whom the

4. DAMAGES: remote and speculative.

defendant neglected to send promised premiums. Damages for pain and suffering caused by such failure could not have been within the contemplation of the parties at the time of making the contract.   They are too remote, and cannot be recovered in this action.   This is too apparent to require the citation of authorities.   For the reasons indicated, the judgment of the court below is—*Reversed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.